Good morning, your honors. May it please the court, Ashwini Mate representing Scott Raymond Shetler. Mr. Shetler's case revolves around two main issues. I'd like to first briefly touch on the suppression argument, as it's a discreet issue. The essence of my argument is that the government did not bear its burden of proving that Mr. Shetler's drug activity statements were necessarily the product of the initial legal search in the garage and his probable cause to arrest thereon. Although the district court determined that this was true, they pointed to no reasoning and no facts that would evidence that Mr. Shetler's statements were necessarily the product of this search. So the one statement that got introduced about the meth aspect of this was basically the last one, right, where he's questioned Syriac and by the DEA person and then by the ATF or in reverse order, is that right? Correct. Did any evidence get introduced at the hearing? Because I couldn't find it. Did any evidence get introduced at the hearing about what was said by the agents, in other words, what they confronted him with before he gave the statements of admitting to the meth? Correct. There was no evidence presented at the suppression hearings or during the trial to indicate what kinds of questions were presented to Mr. Shetler to elicit that statement. And there's actually, in fact, no evidence to indicate that Mr. Shetler even knew about that initial legal search when he made those statements. He wasn't there when it happened, right? He wasn't there when it happened. When he was detained, immediately afterwards, he never made any statements. The only statements he did make, which weren't introduced at trial, were immediately after the four hours he was detained outside of his house, watching the illegal searches of his drug. The government didn't use that particular statement at the trial. They did not use that. Even though it didn't get suppressed, it didn't get used. It didn't get used. This is true. With that, I move to my second issue, which is related to the application of the crack house statute to the facts of Mr. Shetler's case. Mr. Shetler's case involves user-level drug activity within his own home. It's clear that the crack house statute was never meant to be applied to this level of activity within a person's own home. It was meant to be applied, as I argued in my briefs, to large-scale drug operations that pose a significant danger to the community. In this case, in particular, Mr. Shetler was only harming himself within his own home. He didn't maintain, rent, use, or lease the premises at 1364 Grove Side with the intention of conducting drug activities there. His intention was to operate those premises as a residence. His drug activities were merely a recreational, incidental use to that primary purpose of using the property as a residence. As a result, Mr. Shetler was in recreational drug activities, ended up becoming the sum of the purpose of which he was operating this property. This is contrary to the intent of Congress. It's contrary to the application of the statute in the past. And it's contrary to the fabric of our anti-drug laws. Wasn't there some evidence that the girlfriend was using it, too? Yes, but it's... So why wouldn't that be distribution, then? It's not as though he operated this property for the purpose of sharing drugs with his girlfriend. His girlfriend is also a resident on the premises. They had a relationship outside of their drug activities, which is the reason why they were residing together on this premises. But you're not arguing that it has to be the sole purpose, right? I'm not arguing that it has to be the sole purpose, but the drug activity does have to rise to a level that's not incidental to the primary residence purpose. Mr. Shetler was residing there with his girlfriend, with her daughter, with his own daughter. So I maintain that his activities with his girlfriend are still part of his primary residence purpose on the premises. It's his drug activities still are incidental. What if he was living there and he was selling drugs from there? If he was living there and selling drugs from there, that would be a different case. I know that. That's why I asked you about it. If he was selling from the premises, that might actually come under the confines of the statute because it presents that kind of community threat that the crack But there's no evidence that Mr. Shetler was selling from this property. There isn't even a quantity of drugs to indicate that there was a trafficking activity emanating from this property. But so what? I mean, because you kind of went off in two different directions. And, I mean, one was the degree of the purpose, and the other is this notion that it had to be commercial activity. The first has some legs in the statute. The second really doesn't in the sense of nothing in the statute says anything about commercial activity. Right. So what instruction did you ask for that goes to the first, not the commercial? To the first, we asked for two instructions. We asked for the commercial instruction, and we also asked for an instruction indicating that when the primary purpose of the premises is as a legitimate residence, that the government has a stronger burden of proof in determining what the purpose of the drug activities is to that premises. So that was the instruction that we proposed. It was then struck down, and we objected to the instruction that was given. So — But what do you mean, stronger burden of proof? I'm not sure what — more than beyond a reasonable doubt, or — More than necessarily just a significant reason. A stronger burden of proof meaning that they needed to prove that the drug activities then were more than incidental to the primary residence purpose, when a primary residence purpose — Didn't you more or less — I mean, isn't — I mean, the judge didn't instruct the jury that it just had to be a purpose. The judge instructed the jury that it had to be a significant reason. Yes. Isn't that more or less what you just said you were looking for? There's a difference between a significant reason and a reason not incidental to a primary residence purpose. For instance, for example, if the individual decided to stop doing drugs that day, they would still have to live on the property. This to me indicates that the purpose is therefore incidental to a primary residence purpose. A significant reason calls up something different. Perhaps that they — that it's — there's not that much of a difference, I think, in the language between significant and primary. There's some pull there. But I think when we're discussing whether or not the reason is incidental to a primary residence purpose, that raises a different question of the legitimacy of the primary purpose to which the defendant was using the property. So basically what you contend is that the law requires that it be the primary purpose. That's sort of the way your proposed instruction is. You just paraphrase it. Well, not that it has to be a primary purpose, but a reason not incidental to a primary residence purpose. So when there is a legitimate residence purpose, that the drug activity can't merely be a recreational habit or incidental to that primary residence purpose. Read us the actual proposed instruction. The actual proposed instruction? Where is it? It is — I believe the actual proposed — the language of the actual proposed instruction is right in front of me. It says, Maintaining a place within the meaning of 21 U.S.C. 856a means that over a period of time, the defendant directed the activities of — Slow down. Slow down. Sorry. The directed the activities of and the people in the place. The government is not required to prove that the drug activity was the primary purpose of opening, leasing, renting, using, or maintaining a place, but instead must prove that the drug activity was a significant reason why the defendant opened, leased, rented, used, or maintained the place. That second part is the instruction that was given. That's the instruction. Correct. Right. Oh, the instruction that we proposed. Yes. What you proposed. The instruction that we proposed is on — it's on ER 374 to 375. Is it in the brief somewhere? It is part of the excerpt. The instruction we proposed is in the brief somewhere. I don't have the citation to be — So it's on excerpt where? 374 to 375, where we propose that in the context of the language where the purpose of requires that the defendant's — if the premises are maintained as a residence, the defendant's specific purpose of maintaining the residence must be as a primary principal purpose in manufacturing, distributing, or using controlled substances. So when — the spirit of this instruction states that when the defendant is using the purpose, the residence, primarily as a residence, that the drug activities must rise to a greater level than just being incidental to that primary residence purpose. This is the burden I was indicating that the government needed to prove. And there was no evidence to indicate that Mr. Shetler's activities rose to a level beyond being merely incidental to his primary residence purpose. All that the government proved at trial was that he was using in his own and that he manufactured for his personal use. And there's no evidence to indicate how frequently he manufactured for his personal use. We only know that he frequently used within his own home, as he admitted during his statements, and that he manufactured to maintain that personal use. But Mr. Shetler was a drug addict long before he came to the premises of 1364 Groveside, so he stands to reason he may have had sources outside of his manufacturing sources. We only know that he only used what he manufactured, that he never distributed what he manufactured outside of his own home. So his activities still don't rise to the level of presenting that community threat that the crack house statute was intended to apply to. And if there are no further questions, I'll reserve the rest of my time for rebuttal. May I please the court, Jerry Yang on behalf of the United States. Good morning, Your Honors. Your Honors, there are two primary issues here raised by the defense. I will start with the commercial purpose issue that defense has raised. They're sort of not raising that so much right now. They're raising something a little different than that. The commercial purpose as such seems hard to find in the statute, but a requirement that this be the primary purpose seems to be exactly what the statute says. So what's wrong with that? The statute says the primary purpose. That's correct, Your Honor. The statute And here they were instructed it didn't have to be the primary purpose. Doesn't that just violate the statute? Your Honor, if I may direct the court's attention to the actual statute itself. The statute does not, I believe, the statute Doesn't use the word primary. It says for the purpose of. That's correct, Your Honor. And some circuits have added a jury instruction that the purpose be the primary purpose, but not the only purpose. Why don't we adopt that? I think, Your Honor, as the district court may have noted, it's somewhat confusing. There's no requirement here that it's the primary, as in it's the main purpose of the residence is for drug activity. Don't you think that's what Congress really intended? Do you think they intended to use the statute to say anyone who smokes in his own home is guilty of violating the statute? No, Your Honor. I don't believe, the government does not believe that mere incidental uses, mere collateral uses of the property for drug activity. This was collateral. I mean, they were living there. They were smoking a lot of drugs, but they were living there. Wherever they lived, they would have done this, apparently. I mean, where's this quantitative theory? Well, Your Honor, I think the main distinction here is that defendant was not only using the drugs here. He was manufacturing the drugs here. He was manufacturing the drugs here. He was using the drugs for a large amount of time and a large number of uses. And then he was also ---- Doesn't the statute say manufacture, distribute, or use? It does, yes, Your Honor. How could you make that distinction? In other words, if it applies to manufacture, why doesn't it apply to use? I may have misled the Court. What I'm trying to say, Your Honor, is that the ---- this is not a pure use. I understand that, but the statute doesn't differentiate. The statute says manufacture, distribute, or use. So if the purpose for manufacturing purpose doesn't have to be the primary purpose, then why is it for use? I just don't know how you would interpret the statute differently from purpose is purpose for manufacture or for use. They're both co-equal in the statute. I think Your Honor's correct. There's two ---- there's basically two things here. There's the nature of the use, whether it be a use, a consumption, whether it be manufacturing or distributing. That's one factor. And then the second one is the magnitude of that manufacturing, distribution. So if they use a lot of it, it wouldn't matter if they were manufacturing it, on your theory. No. I guess what I was trying to address was the Court's concern about the magnitude of the drug activity. You're talking about the primary, non-primary issue, in other words. Correct. I was ---- So how can the ---- all I'm asking is this. The statute treats manufacture, distribution, and use co-equally. So how can the primary purpose vary, depending on whether it's manufacture or use? You're saying it has to be more primary if it's use than if it's manufacture or, in fact, it can't even ---- it has to be the primary purpose if it's use, but not if it's manufacture? No. That is not at all what I'm saying. All right. So what do you say? No. No, Your Honor. What I was trying to say, ineffectively, but what I was trying to say was that a jury instruction that says the primary use of the property has to be for drug activity, I believe, is misleading in terms of or it's confusing, rather, in terms of the word primary has connotations of the main, greater than 50 percent, for example. And that's not supported by the case law. The case law merely says that it does not have to be an incidental or collateral use of ---- Just tell me that other circuits, they are using the word primary. That's correct. And here, the ---- Well, then, after you said that, Judge, I think it was Judge Breslin, maybe it was Judge Connelly, said, why don't we adopt what the other circuits did? Do you have any objection to that? I think the jury instruction that the use has to be the primary or principled use, I believe, is not accurate with the state of the case law. I mean, the problem is that the statute says for the purpose of, and the word the in there has to mean something. I mean, it doesn't just say for a purpose of manufacturing, distributing, or using. So I don't know whether it has to be more than 50 percent, more than 90 percent, or whatever, but it just seems to me that when the statute reads for the purpose of something, that suggests some level of primacy that has to be involved. And that's why, I guess I'm wondering the same thing, why shouldn't we just adopt what these other circuits have done? And I believe, Your Honor, that these other circuits have interpreted that as not the only, the sole, or the highest reason, but rather that it just ---- Your Honor, it's absolutely correct in that the other circuits have interpreted that phrase in the purpose as some sort of a requirement on the magnitude of the use. And the Your Honor, I believe I've also qualified that by saying that it does not have to be the only use. Okay. Fair enough. And here they were told that it's not, didn't have to be the primary, so they were told the opposite. So why don't we just say that was an erroneous instruction? Here, the instructions, Your Honor, if I may, I think a common reading of the word of the phrase, the government is not required to prove that the drug activity was the primary purpose, I think that's an accurate reflection of the law. The law does not say it has to be the primary, the highest purpose of that property, the largest single use of that property. I don't believe the ---- In fact, it says it has to be the purpose. You could even get out of it and have it be the only purpose. But assuming we don't go to there, why don't we at least say it has to be a very big purpose, particularly when it's a residence also? I mean, it makes sense to distinguish residences perhaps from other places because people have to live somewhere. I think, Your Honor, the ---- there's two ways to get to basically the correct magnitude requirement here. One way would have been to say what the other circuits have done, basically say the government has to prove that it's the primary purpose, and then qualify that with it does not have to prove that it was the only purpose. That's one way. It sounds perfectly accurate to me. And this construction is the opposite. And another way of getting there, Your Honor, I would submit would be to say that the drug activity had to be a significant purpose. And that also gets to the magnitude of the use. And it's a lesser magnitude. It's clearly a list. Clearly significant is different than primary. Particularly when they're told it doesn't have to be primary. I would submit that at the instruction that says the government has to prove that it has to be the primary use, but then to qualify that by saying it doesn't have to be, I would submit that that is confusing to the jury because it implies ---- I'm not sure whether significant is particularly clear either. I mean, it doesn't really tell you what significant means. I don't know. Well, it certainly requires that the jury find that the use was not merely incidental or that it wasn't merely collateral. Well, it doesn't say that, though. I mean, I can imagine something incidental being still significant, at least in the minds of some jurors. I mean, this presumably was incidental and collateral in the sense that he was living there. And he happened to be a guy who smoked methamphetamine and produced it for his own use. But it was collateral. I mean, he didn't ---- he was living there in order to live there. You know, and you say that, well, he didn't just use it. He also manufactured it. Well, they intended somebody who smoked in his own home not to be subject to this. Well, where is he going to get the meth? If he purchases it and buys it, that's more of a violation than if he makes it for himself. So if they intended somebody to not be violating this major statute, if he smokes in his own home, they must have known that he was going to either be making it or be violating some other major statute. Well, Your Honor, I think the purpose of this statute, in that it's different from the typical 841 drug statute, is that it's intended to address the use of the property for the drug activities. And that's why its focus is ---- Like crack houses and things like that. I mean, if, you know, if reading it the way you do, if you can imagine somebody because the statute covers use, then you can imagine somebody growing a few marijuana plants in their backyard and then smoking it. And that's it. And that's a purpose because they're using their backyard for it. It doesn't have to be the primary purpose. You're right. And so that person is now operating a drug house. Under your construction of the statute, at least is the way the jury was instructed here because it's a significant reason because he needed a backyard. I think the jury would then also be, it would also depend on the magnitude of the ---- Well, but I'm just talking about the jury instruction that this jury was given in this case. I mean, under that hypothetical, the defendant's guilty of operating a drug house, I think. And I really don't think that's what Congress intended here. I want to ask you a question about the search issue. Okay? It was the same question as the first question I asked the defense counsel. So was there any evidence introduced to the judge, either documents, affidavits or testimony or whatever, that described or that explained or that showed what it was that the defendant was confronted with or what he was told that elicited his statement to the DEA agent that was used at the trial about his manufacture and use of methamphetamine? No. There was no ---- How, if there was no evidence introduced, how could the government possibly have carried its burden of showing that it was attenuated from the illegal search? Based on the court's ---- the district court's order, Your Honor, the officers had gone into the garage, came back out, saw some of the ---- But we don't know. I mean, I think this is what Judge Connelly is saying. We don't know that the district, that the officers did not say to him, pick up something that they had gotten in one of the illegal searches and say, look, we have this. You know, what is it? We don't know that, which generated his decision to confess because they knew everything now. In other words, the only way that the statement isn't elicited from the illegal search is if what the agent said is that, hey, we went into the garage and we found the two beakers in the duffel bag, the bottle of acetone and this bottle of red stuff here. And that's all they said to him. That's the legal search that the judge concluded was legal. If some agent had gotten on the witness stand and said, hey, that's all I told him, and he just admitted to all this methamphetamine use, then you'd be okay. But that doesn't exist. For all we know, and it's the government's burden here, for all we know, he was confronted with the hot plate and all of the other stuff that was found later in the search that the judge found illegal. In fact, didn't he see the search, the illegal search? And he didn't see the legal search. That is what the district court found, yes. So that, you know, he knew they'd gone in. He didn't know it was legal or illegal. He knew they'd gone in and that they'd find all this stuff. And there was no way for him to know that they'd made a legal search somewhere else. All he knew about was the illegal search and that they'd gotten what was in the house. In pursuance of the illegal search. That's all he was aware of. Your Honor, the argument is that even if defendant was confronted with both evidence of the illegal search and the legal search, that the statements that were made about the drugs, not the guns, but about the drugs, were sufficiently attributable to the evidence obtained through legal means. Number one, I think you don't quite follow what I was saying. He didn't know about the legal search. He knew about the illegal search. He witnessed that search. He didn't know there'd been another search that was legal. All he knew about was what he saw. And he saw the illegal search. He stood out there for four, five hours while these people in their uniforms and hats or whatever they were searched the house. So he knew what they would find. But he didn't know anything about a prior legal search. Your Honor, I don't know if this helps anybody. The district court did not conclude that he did not witness the legal entry into the garage. Was there any evidence that he did? What happened was the officers went inside the garage, came back out of the garage, knocked on the front door before they went into the house. And so there's nothing in the record that says, well, he was looking out the window and saw it or anything like that. There's nothing in the record one way or the other. That's correct. Okay. That's correct. But more than that, there's nothing in the record about what went on during the interrogation. I mean, I'm not entirely sure what the case law says about, you know, what connection you need between a search and a confession to make the confession the result of the search. But you'd think that it would at least be relevant to know whether the outcome of the search was mentioned during the interrogation and in what way. We don't know that. No, Your Honor. We don't know what specifically defendant was confronted with. But the case law, as far as the issue concerning the fruit, the case law is this, Your Honor. The Ninth Circuit, as well as the Supreme Court, has rejected a simple but-for type of analysis in that just because there is an illegal search and then subsequent statements, it does not mean that but-for, the search or the statements are excluded. What the courts, the Harris decision, the, I'm sorry, I'm blanking here, the Crawford decision, Your Honor, and those lines of cases, along with the case that the government cited, Green, what that, what those lines of cases have distilled is that there is no but-for test, but what the district court, what the courts should look at is that if the statements were sufficiently a product of a legal evidence, then the statements would be still admissible, notwithstanding the fact that there was an illegal search. That gets us to the second point, but I don't think we have time for it this morning. So we're over time. But two minutes over, not to go. Thank you very much for your argument. Thank you both very much. The case just argued will be submitted. Thank you.
judges: Kennelly, Reinhardt, Berzon